
JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8252 | **DATE** | 3/18/2002 |
| **CASE TITLE** | USA vs. Alton Mills | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Because the right he asserts is not retroactively applicable on collateral review, Mills may not take advantage of the extended statute of limitations offered by §22555(3). Instead, Mills must have filed his habeas corpus petition within one year of the date that his conviction became final. As we outlined above, Mills missed the one-year statute of limitations deadline, and although he was just one day late, we are barred from reviewing his claim. Mills' petition for a writ of habeas corpus is therefore denied. The status hearing set for 3/28/02 is stricken.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 1 9 2002 | |
| | Notified counsel by telephone. | | date docketed | 47 |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/18/2002 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

ALTON MILLS, )
)
Petitioner, )
)
) Case No. 98 C 8252
v. )
)
)
UNITED STATES OF AMERICA, )
)
Respondent. )

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Alton Mills has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2255, asking this court to vacate, set aside, or correct the sentence it imposed upon his conviction. For the reasons set forth below, we deny the petition.

FACTUAL BACKGROUND

On October 6, 1993, federal prosecutors charged Mills and six co-defendants with various narcotics offenses. On December 1, 1993, a federal jury found Mills guilty of conspiring to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846 (Count 1), possessing cocaine base with intent to distribute in violation of 21 U.S.C. § 841 (Count 25), and using a telephone to facilitate the commission of narcotics offenses in violation of 21 U.S.C. § 843(b) (Counts 9 and 11). On July 14, 1994, this court sentenced Mills to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii). Under this provision, a person found guilty of possessing or conspiring to possess cocaine base with intent to distribute must be sentenced to life imprisonment if he possessed or conspired to possess more than 50 grams of cocaine base and he has two or more prior felony drug convictions. However, the United States acknowledges that the issue of drug quantity was never submitted to the jury. *See* Resp. 4-5. Instead, as required by well-settled precedent at the time, see *United States v. Jackson*, 207 F.3d 910 (7th Cir. 2000), this court found by a preponderance of the evidence that Mills possessed more than

47

50 grams of cocaine base. Since Mills had multiple prior felony drug convictions, we imposed a mandatory life sentence.

## DISCUSSION

Mills, citing the Supreme Court's recent decision in Apprendi v. United States, 530 U.S. 466 (2000), now correctly claims that the mandatory life sentence imposed by this court is unconstitutional. Mills, however, missed the one-year statute of limitations deadline governing habeas petitions. Therefore, in order to review his Apprendi claim, we must find that it is not procedurally defaulted and that Apprendi is retroactively applicable on collateral review. Although Mills has not procedurally defaulted his claim, we find that Apprendi is not retroactive on collateral review.

### A. Does Mills' Sentence Violate Apprendi?

In Apprendi, the Supreme Court held that any fact which increases a sentence beyond the statutory maximum must be found by a jury beyond a reasonable doubt.[1] Id. at 490. Mills argues that his sentence violates this rule. See Am. Pet. ¶ 7. Under § 841(b)(1)(C), the unenhanced statutory maximum for possessing or conspiring to possess with intent to distribute cocaine base is 20 years. This sentence is enhanced to a mandatory life term when it is found that the defendant possessed or conspired to possess more than 50 grams of cocaine base and had two or more prior felony drug convictions. See 21 U.S.C. § 841(b)(1)(A)(iii). Apprendi requires that a jury determine beyond a reasonable doubt whether a defendant possessed or conspired to possess more than 50 grams of cocaine base. See United States v. Smith, 241 F.3d 546, 547 (7th Cir. 2001) ("Apprendi establishes that the district court erred in 1992 when it failed to tell the jury to determine whether Smith is accountable for more than 50 grams of crack cocaine"). In Mills' case, however, this court made that determination by a preponderance of the evidence. Mills is therefore correct – his life sentence violates

---

[1] The existence of prior felony convictions, however, is an exception to this rule – a district court need not submit this issue to a jury. See United State v. Duvall, 272 F.3d 825, 830 (7th Cir. 2001).

2

the rule announced in Apprendi.[2] See *United States v. Nance*, 236 F.3d 820, 822 (7th Cir. 2000) (a sentence under § 841 enhanced beyond 20 years by a judicial determination that the quantity of drugs exceeded 50 grams "cannot be reconciled with Apprendi").

B. Is Mills' Habeas Petition Timely?

In order to pursue his Apprendi claim, however, Mills must have filed a timely habeas petition. The Antiterrorism and Effective Death Penalty Act imposes a one-year statute of limitations on habeas petitions. See 28 U.S.C. § 2255 ¶ 6. Ordinarily, the limitations period begins to run when "the judgment of conviction becomes final," § 2255 ¶ 6(1), and under this provision, Mills' habeas petition would be untimely. Mills' conviction became final when the Supreme Court denied his petition for a writ of certiorari on December 15, 1997. See *United States v. Mills*, 522 U.S. 1033 (1997). Therefore, under the "anniversary rule" adopted by the Seventh Circuit, Mills had until December 15, 1998, to file his habeas petition. See *United States v. Marcello*, 212 F.3d 1005, 1008-1010 (7th Cir. 2000). Mills, however, claims that he filed his original habeas petition on December 16, 1998.[3] See Amend. Pet. ¶ 5. Mills missed the one-year statute of limitations deadline imposed by § 2255 ¶ 6(1), and

---

[2]Mills also argues that we did not possess "jurisdiction" to impose a life sentence for possession with intent to distribute because the grand jury indictment did not include a material element necessary to support that enhanced sentence, i.e., possession of 50 grams or more of cocaine base. See Am. Pet. ¶ 6. This argument fails for two reasons. First, the Seventh Circuit has rejected the argument that an indictment which fails to charge drug quantity does not confer subject-matter jurisdiction on the district court. See *United States v. Bjorkman*, 270 F.3d 490-91 (7th Cir. 2001). Second, although the issue of drug quantity was not submitted to the jury, Count 1 of the indictment did in fact charge Mills with conspiring to possess with intent to distribute more than 50 grams of cocaine base. See *United States v. Banks*, 78 F.3d 1190, 1201 (7th Cir. 1996). Since the grand jury's indictment on Count 1 was sufficient to warrant a life sentence in this case, Mills was not prejudiced by the indictment's failure to include drug quantity in Count 25.

[3]The district court clerk's office did not receive Mills' petition until December 22, 1998. However, under the so-called "mailbox rule," a habeas petition filed by a pro *se* prisoner is deemed filed when given to the proper prison authorities. *Jones v. Bertrand*, 171 F.3d 499, 520 (7th Cir. 1999). In claiming that he "filed" his petition on December 16, then, we presume that Mills means that he gave his petition to prison authorities on this date. The other available evidence supports this conclusion – the envelope in which the petition arrived includes a stamp from the Federal Bureau of Prisons indicating that the enclosed material was processed on December 17, and the letter itself is postmarked December 18. Finally, we note that Mills' petition has languished in this court for an unusually long period of time because three of his court-appointed lawyers withdrew over the course of this litigation and the petition was at one point dismissed without prejudice.

although he was just one day late, we would be barred from reviewing his claim. See *Marcello*, 212 F.3d at 1010 (habeas petition filed one day late is untimely).

For newly-recognized constitutional claims, however, the limitations period does not begin to run until "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 ¶ 6(3). If the right Mills asserts is newly recognized and retroactively applicable on collateral review, then his habeas petition would be timely.[4] Since the right announced in *Apprendi* is newly recognized, see *Ashley*, 266 F.3d at 672 (finding that "[n]o one could doubt that Apprendi 'newly' or 'initially' recognizes a constitutional right"), we can turn directly to the retroactivity question. Before we reach the retroactivity question, however, we must make two brief detours.

### 1. Procedural Default

The Seventh Circuit has indicated that it may be unnecessary to reach the retroactivity question if the petitioner has procedurally defaulted his *Apprendi* claim by failing to raise the issue on direct appeal. See *Ashley*, 266 F.3d at 675. Although the United States claims that Mills failed to raise the Apprendi issue on appeal, Mills proves otherwise. In his appellate brief to the Seventh Circuit, Mills made the following argument:

> The Confrontation Clause and the Due Process requirement of proof beyond a reasonable doubt should apply to the fact-finding necessary under the Sentencing Guidelines to increase a defendant's sentence based on the post-trial proof of facts . . . . Because of the importance of accurate fact-finding, confrontation and proof beyond a reasonable doubt should apply.

Mem. in Support of Am. Habeas Pet. at 2. Mills' appellate brief clearly raised an *Apprendi*-type argument.

---

[4]When a newly recognized right is made retroactively applicable on collateral review, the statute of limitations period begins to run when the retroactivity decision is made by the court with territorial jurisdiction. *Ashley v. United States*, 266 F.3d 671, 674 (7th Cir. 2001). Since the Seventh Circuit has not reached the question of Apprendi's retroactivity, this limitations period has not yet even begun to run. If his argument were to prevail, Mills' petition would therefore be timely as a matter of course.

4

Moreover, the appellate opinion in this case supports Mills. In a section entitled "Constitutional Challenges," the Seventh Circuit rejected "a number of constitutional challenges to the procedures used in [defendants'] sentencing and sentencing guidelines." *Banks*, 78 F.3d at 1208. The court refused to overturn numerous precedents, including the following: "*United States v. Porter*, 23 F.3d 1274, 1277 (7th Cir. 1994) (preponderance of evidence standard adequate for sentencing phase); *United States v. Johnson*, 32 F.3d 265, 268 (7th Cir. 1994) (quantity of drugs purely a 'sentencing issue'; does not need to be proven by clear and convincing evidence)." *Id.* The citation of these cases shows that Mills raised and the court considered an Apprendi-type argument on direct appeal. Therefore, Mills has not procedurally defaulted this claim.

### 2. Changed Circumstances

The fact that Mills raised the *Apprendi* argument on direct appeal, though, means that he cannot re-litigate this issue on collateral review unless he can show "changed circumstances of fact or law." See *Olmstead v. United States*, 55 F.3d 316 (7th Cir. 1995) (when reviewing § 2255 motion, "in the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal"). The Supreme Court's decision in *Apprendi* certainly constitutes changed circumstances of law sufficient to permit re-litigation of this issue on collateral review. See *Ashley*, 266 F.3d at 672 (noting that "Apprendi caused this court to overrule numerous cases, a sign that something novel occurred"). We are therefore required in this case to reach the retroactivity issue.[5]

### 3. Retroactivity

#### a. Retroactivity of New Interpretations of Criminal Statutes

Mills initially argues that Apprendi is automatically retroactive on collateral review because it announces a new rule of substantive criminal law rather than a new rule of criminal procedure. *See*

---

[5]The United States suggests that only the Supreme Court may decide whether a newly recognized right is retroactively applicable on collateral review. The Government's brief in this case, however, was filed before the Seventh Circuit's decision in Ashley which explicitly rejected this argument and invited district courts to determine for themselves whether *Apprendi* is retroactive. See *Ashley*, 266 F.3d at 673-74.

Reply at 7-8 (citing Santana-Madera v. *United States*, 260 F.3d 133 (2nd Cir. 2001)). Indeed, new interpretations of criminal statutes are automatically retroactive on collateral review provided that they have been raised on direct appeal. See *Bousley v. United States*, 523 U.S. 614, 619-20 (1998). However, *Apprendi* announced a new rule of criminal procedure, not a new interpretation of a criminal statute. See *Apprendi*, 530 U.S. at 475 (noting that "[t]he substantive basis for New Jersey's enhancement . . . is not at issue; the adequacy of New Jersey's procedure is"). Therefore, Apprendi is not automatically retroactive on collateral review.

### b. Retroactivity of New Rules of Criminal Procedure

The retroactivity of new rules of criminal procedure is governed by Teague v. *Lane*, 489 U.S. 288 (1989). In *Teague,* the Supreme Court held that new rules of criminal procedure are not to be applied retroactively on collateral review except in two limited circumstances. First, new rules which prohibit the punishment of certain kinds of primary, individual conduct are to be applied retroactively.[6] See *id.* at 311. Second, new rules which seriously diminish the likelihood of an inaccurate conviction and which implicate the fundamental fairness of the trial are to be applied retroactively. See *id.* at 311-13. Since the first exception is clearly inapposite,[7] we must determine whether Apprendi falls within Teague's second exception.[8]

---

[6]In his concurrence in Mackey v. *United States*, 401 U.S. 667, 692 n.7 (1971), upon which Teague relies heavily, Justice Harlan indicated that Griswold v. *Connecticut*, 381 U.S. 479 (1965), and *Loving v. Virginia*, 388 U.S. 1 (1967), fall within this first exception. In these cases, the Supreme Court held that the proscription of certain conduct (in G*riswold*, the ban on sale of contraceptives; in Loving, the ban on interracial marriage) violated the Fourteenth Amendment's due process clause.

[7]*Apprendi* called into question not the federal government's authority to proscribe the conduct with which Mills is charged, but rather the procedure by which an individual is tried for such conduct.

[8]Although the Seventh Circuit has not yet reached this issue, every other circuit that has considered this question has held that Apprendi is not retroactive on collateral review. See *Sanders*, 247 F.3d 139, 146-51 (4th Cir. 2001); United States v. Moss, 252 F.3d 993, 997-1003 (8th Cir. 2001); *Jones v. Smith*, 231 F.3d 1227, 1236-38 (9th Cir. 2000); McCoy v. *United States*, 266 F.3d 1245, 1254-58 (11th Cir. 2001). Moreover, each of our sister courts in this district that has considered this question has also held that Apprendi is not retroactive. See United States v. *Scurlock*, 2001 U.S. Dist. LEXIS 8496, at *4 (N.D.Ill. 2001) (Zagel, J.); Hampton v. *Leibach*, 2001 WL 1518533, at *24-25 (N.D.Ill. 2001) (Kennelly, J.); United *States v. Barnett*, 2001 WL 1519421, at *1-6 (N.D.Ill. 2001) (Lindberg, J.). We note, however, that in each of these district court cases, the

There can be no doubt that Apprendi seriously diminishes the likelihood of an inaccurate conviction.[9] By raising the burden of proof on certain facts from "preponderance of the evidence" to "beyond a reasonable doubt," Apprendi necessarily reduces the chances of inaccurate convictions by making it more difficult to obtain every conviction. *Cf. Sanders*, 247 F.3d at 149-50 (acknowledging that reasonable doubt standard "will promote marginally more accurate results"). The Eighth Circuit, however, questions this logic: "it seems arguable whether Apprendi increases the reliability of the guilt-innocence determination at all because the rule does not protect the innocent from conviction, it instead limits the sentencing exposure of those who have been validly convicted." *Moss*, 252 F.3d at 998-99. This misses the entire point of *Apprendi*. Where the finding of a particular fact (e.g., drug quantity) increases a sentence beyond the statutory maximum, that fact is "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." Apprendi, 530 U.S. at 494 n.19. *See also United States v. Vera*, 2002 WL 75867, at *1 (7th Cir. Jan. 22, 2002) ("increasing the maximum penalty . . . is enough like convicting of a different and more serious crime that the increase must be justified beyond a reasonable doubt"). A defendant is not "validly convicted" of the greater offense unless the jury makes this determination beyond a reasonable doubt. In Mills' case, however, a judge made this determination by a mere preponderance of the evidence. Although Mills was found guilty of the lesser offense, we cannot simply assume that he was guilty of the greater offense; Mills does not lose the presumption of innocence with regard to the greater offense by virtue of his conviction for the lesser offense. Therefore, by increasing the burden of proof, Apprendi does indeed "protect the innocent from conviction" and diminish the likelihood of inaccurate convictions.

In order to qualify for retroactive application on collateral review, however, a new rule must also "implicate the fundamental fairness of the trial." *Teague*, 489 U.S. at 312. Only "watershed rules of

---

court was not required to reach the Apprendi issue to dispose of the case. *See Scurlock*, 2001 U.S. Dist. LEXIS 8496, at *4-5 (defendant procedurally defaulted *Apprendi* claim); Hampton, 2001 WL 1518533, at *14-22 (writ of habeas corpus granted on other grounds); United *States v. Barnett*, 2001 WL 1519421, at *6 (defendant procedurally defaulted Apprendi claim).

[9]Of course, Apprendi also increases the likelihood of inaccurate acquittals, but this fact does not have constitutional significance.

criminal procedure" are to be applied retroactively, Teague, 489 U.S. at 311, that is, rules which "alter our understanding of the bedrock *procedural elements* essential to the fairness of a proceeding," Sawyer v. Smith, 497 U.S. 227, 242 (1990), or rules which are "implicit in the concept of ordered liberty." *O'Dell v. Netherland*, 521 U.S. 151, 157 (1997). The Supreme Court has suggested that few rules will meet these strict standards. See *Graham v. Collins*, 506 U.S. 461, 478 (1993) (finding it "unlikely that many such components of basic due process have yet to emerge"). Indeed, as the Fourth Circuit notes, "since Teague, the Court has yet to find a single rule that qualifies." Sanders, 247 F.3d at 148.

Nonetheless, Mills urges us to find that Apprendi does implicate the fundamental fairness of the trial, and at first glance, it seems difficult to conclude otherwise. A jury never determined beyond a reasonable doubt that Mills was in fact guilty of the greater offense for which he has been sentenced to life in prison. The Sixth Amendment, however, "the spinal column of American democracy," N*eder v. United States*, 527 U.S. 1, 30 (1999) (Scalia, J., concurring in part and dissenting in part), guarantees the right to trial by jury, see *Duncan v. Louisiana*, 391 U.S. 145 (1968), and requires that a jury find guilt beyond a reasonable doubt. See *In re Winship*, 397 U.S. 358 (1970). In holding that any fact which increases a sentence beyond the statutory maximum must be found by a jury beyond a reasonable doubt, Apprendi reaffirms these fundamental principles of American democracy and thereby seems to demand retroactive application on collateral review.

### c. Retroactivity and Harmless/Structural Error

However, recent trends in the Supreme Court's application of harmless-error analysis on direct appeal give us pause. In *Chapman v. California*, 386 U.S. 18 (1967), the Court held that certain constitutional errors objected to at trial could be overlooked on appeal as "harmless" so long as the government could show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24. See also Fed.R.Crim.P. 52(a) (requiring harmless-error analysis for errors objected to at trial). Although most constitutional errors are subject to harmless-error analysis, the Court has identified a small number of "structural" errors so serious as to defy harmless-error

8

analysis and require automatic reversal. *See Neder v. United States*, 527 U.S. at 8 (citing Gideon *v. Wainwright*, 372 U.S. 335 (1963) (complete denial of counsel); Tumey v. Ohio, 273 U.S. 510 (1927) (biased trial judge); Vasquez *v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in selection of grand jury); McKaskle *v. Wiggins*, 465 U.S. 168 (1984) (denial of self-representation at trial); Waller *v. Georgia*, 467 U.S. 39 (1984) (denial of public trial); Sullivan *v. Louisiana*, 508 U.S. 275 (1997) (defective reasonable doubt instruction)).

The Fourth Circuit has recognized that the structural error inquiry seems to track closely Teague's fundamental fairness requirement. *See Sanders*, 247 F.3d at 150-51. Structural errors are errors which "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" Neder, 527 U.S. at 8-9 (quoting Rose *v. Clark*, 478 U.S. 570, 579 (1986)). Since structural error is closely analogous to *Teague's* fundamental fairness requirement, "finding something to be a structural error would seem to be a necessary predicate for a new rule to apply retroactively under Teague." *Sanders*, 247 F.3d at 150-51. *Accord Moss*, 252 F.3d at 1000-1001; McCoy, 266 F.3d at 1249-52. Supreme Court and Seventh Circuit opinions discussing structural error are therefore relevant to the retroactivity question.

In Sullivan v. Louisiana, 508 U.S. 275 (1993), the Court found that a defective reasonable doubt instruction was structural error that required automatic reversal of a jury verdict. "The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* at 279. Since the jury had not rendered a verdict beyond the correct reasonable doubt standard, "there [was] no jury verdict within the meaning of the Sixth Amendment." *Id.* at 280. To apply harmless-error analysis in this case would require appellate courts to speculate whether a reasonable jury would have determined that the defendant was guilty beyond a reasonable doubt. The Court recognized, however, that "[t]he Sixth Amendment requires more than appellate speculation about a hypothetical jury's actions . . . ; it requires an actual jury finding of guilty." Id.

9

In Neder, however, a closely divided Court seemed to back away from Sullivan. Although the trial judge in a federal tax fraud prosecution failed to submit the issue of materiality to the jury as required by United *States v. Gaudin*, 515 U.S. 506 (1995), the Court held that the omission of an element from a charge to the jury was not structural error exempt from harmless-error analysis. N*eder*, 527 U.S. at 10. Instead, where the trial judge made the determination of materiality, it was harmless error if the appellate court found "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."[10] Id. at 18. By allowing appellate courts to speculate whether a hypothetical jury would have found an omitted element beyond a reasonable doubt, the Court appeared to undercut significantly the rationale of Sullivan. S*ee id.* at 10 (noting that "[our] conclusion that the omission of an element is subject to harmless-error analysis is consistent with the holding (if not the reasoning) of Sullivan"). N*eder* thus appears to support the conclusion that Apprendi is neither structural error nor retroactive on collateral review.[11]

The Seventh Circuit, though, has not yet decided whether Apprendi error is structural error exempt from harmless-error analysis.[12] Nonetheless, two recent decisions offer us some guidance on

---

[10]Four Justices objected that Neder directly contradicted Sullivan by depriving the defendant of a jury verdict and by allowing an appellate court to speculate about the defendant's guilt. S*ee id.* at 261 (Steven, J., concurring in part and concurring in the judgment); id. at 30-33 (Scalia, Souter, and Ginsburg, J., concurring in part and dissenting in part).

[11]Indeed, the Fourth and Eighth Circuits relied on Neder in deciding that Apprendi was not retroactive on collateral review. See *Sanders*, 247 F.3d at 148-49; *United States v. Moss*, 252 F.3d at 1000-1001.

[12]Although the Seventh Circuit has said that "it is now well-established in this circuit that Apprendi errors in both the indictment and the charge to the jury are subject to harmless error analysis," United States v. Adkins, 274 F.3d 444, 454 (7th Cir. 2001), this statement is misleading. In support, the court cited only cases which have applied plain-error analysis to Apprendi violations. See *Bjorkman*, 270 F.3d at 492; United *States v. Martinez*, 258 F.3d 582, 586 (7th Cir. 2001); Nance, 236 F.3d at 825. We have not identified any cases applying harmless-error analysis to Apprendi violations. This is hardly surprising – harmless-error analysis is reserved for those errors objected to at trial, and few defendants have made an Apprendi-type argument at trial.

The Seventh Circuit has rejected Apprendi claims under plain-error analysis, *see, e.g., Nance,* 236 F.3d at 825, and the Fourth and Eleventh Circuits suggest that this fact supports the conclusion that Apprendi is not structural error. S*ee Sanders*, 247 F.3d at 150; McCoy, 266 F.3d at 1249-52. However, it would not be inconsistent to hold that an A*pprendi* violation is structural error but is *not* reversible under plain-error analysis. Harmless-error analysis is reserved for those errors objected to at trial, while plain-error analysis is applied to errors not raised at trial. Federal law consistently recognizes that defendants who fail to object at trial are not entitled to the same

this question. In *Waldemer v. United States*, 106 F.3d 729 (7th Cir. 1997), a case decided before Neder, the Seventh Circuit held that a trial court's failure to submit to the jury the issue of the materiality of the defendant's false statements as required by Gaudin was structural error. *Id.* at 736 n.3. In this case, the court used the language of harmless-error analysis even though this was in fact a collateral attack on the defendant's conviction. Although the defendant failed to raise the G*audin* issue at trial or on direct appeal, the court found that the defendant had not procedurally defaulted his claim and proceeded to apply Gaudin retroactively without discussing Teague. *See United States v. Mandanici*, 205 F.3d 519, 527 n.15 (2nd Cir. 2000) (discussing Waldemer). This suggests two things. First, it lends support to our assumption that the question of structural error is relevant to the retroactivity issue. *See Sanders*, 247 F.3d at 150-51 ("finding something to be a structural error would seem to be a necessary predicate for a new rule to apply retroactively under Teague"). Second, it indicates that, at least before Neder, the Seventh Circuit believed that the omission of an element from the charge to the jury constituted structural error on direct appeal and was retroactively applicable on collateral review.

In Lanier *v. United States*, 220 F.3d 833 (7th Cir. 2000), however, a case decided after Neder, the Seventh Circuit applied harmless-error analysis to a claim of R*ichardson* error.[13] The defendant challenged his continuing criminal enterprise conviction on collateral review, and because Ri*chardson* offered a new interpretation of a criminal statute rather than a new rule of criminal procedure, it was automatically retroactive on collateral review. I*d.* at 838. Nonetheless, in determining whether the defendant had been prejudiced by the error, the court found that the failure

---

fundamental guarantees as those who preserve their objections. In this respect, plain-error analysis on direct appeal is the cousin of the procedural default doctrine on collateral review – even meritorious constitutional objections are potentially forfeited if not raised at the proper time. As Justice Scalia notes, "there is nothing 'internally inconsistent' about believing that a procedural guarantee is fundamental while also believing that it must be asserted in a timely fashion. It is a universally acknowledged principle of law that one who sleeps on his rights – even fundamental rights – may lose them." N*eder*, 527 U.S. at 35 n.1 (Scalia, J., concurring in part and dissenting in part).

[13]In Richardson *v. United States*, 526 U.S. 813 (1999), the Supreme Court held that in deciding whether a defendant was guilty of participating in a continuing criminal enterprise under 21 U.S.C. § 848, the jury must unanimously agree as to which specific violations constitute the continuing series.

to give the unanimity instruction as required by Richardson was subject to harmless-error analysis. Citing Neder, the court held that the "omission of an element of a crime is not a structural defect, nor is an error involving improper instruction on a single element of an offense." *Id.* The court then found that it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. See id. at 839-40.

The key question, then, is whether Waldemer has been displaced by Neder and Lanier. We believe it has. Although there is an alternative reading of *Neder* that would save Waldemer,[14] this is not the most natural interpretation of the Court's decision. Despite vigorous dissent, the *Neder* majority seemed willing to allow judges to determine whether an omitted element would have been found by a jury beyond a reasonable doubt. Moreover, although the error in Lanier (omission of the unanimity element) is not exactly the same as *Apprendi* (omission of the drug quantity element), it is sufficiently analogous to conclude that the Seventh Circuit would most likely apply harmless-error analysis to Apprendi errors. If the errors in *Neder* and *Lanier* do not rise to the level of structural error, it is difficult to see how Apprendi could be considered a "bedrock" or "watershed" rule requiring retroactive application on collateral review. We therefore hold that *Apprendi* is not retroactive on collateral review.

---

[14] In defending its decision, the Neder majority noted that the defendant "was tried before an impartial judge, under *the correct standard of proof* and with the assistance of counsel." *Neder*, 527 U.S. at 9 (emphasis added). This statement suggests that the trial judge determined beyond a *reasonable doubt* that Neder's false statements were material. Strictly speaking, then, *Neder* does not hold that the omission of an element from a charge to the jury is subject to harmless-error analysis where the trial judge finds that element b*y a preponderance of the evidence*. Rather, *Neder* holds only that the failure to submit an element to the jury is subject to harmless-error analysis where the trial judge finds that element beyond *a reasonable doubt*. Indeed, this may offer a way to reconcile the apparently contradictory opinions in Sullivan and Neder. When a trial judge finds an element beyond a reasonable doubt, this error is subject to harmless-error analysis under *Neder*. However, when a trial judge finds an element by a mere preponderance of the evidence, a defendant has been so thoroughly deprived of his Sixth Amendment rights (both right to trial by jury and right to the reasonable doubt standard) as to require automatic reversal as structural error. *See generally* Christopher Rohrbacher, The Retroactivity of Apprendi on Collateral Review (Mar. 1, 2002) (unpublished manuscript, on file with The John Marshall Law Review).

## CONCLUSION

Because the right he asserts is not retroactively applicable on collateral review, Mills may not take advantage of the extended statute of limitations offered by § 2255 ¶ 6(3). Instead, Mills must have filed his habeas petition within one year of the date that his conviction became final. *See* 28 U.S.C. § 2255 ¶ 6(1). As we outlined above, Mills missed the one-year statute of limitations deadline, and although he was just one day late, we are barred from reviewing his claim. *See Marcello*, 212 F.3d at 1010 (habeas petition filed one day late is untimely). Mills' petition for a writ of habeas corpus is therefore denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 3/18/02